## In re PACIFIC MAIL S. S. CO.

### (District Court, N. D. California. April 10, 1903.)

### No. 12,368.

**1. SHIPPING—SINKING OF VESSEL—NEGLIGENCE OF NAVIGATING OFFICERS.**

The sinking of the steamer City of Rio de Janeiro outside San Francisco by striking a sunken rock *held*, under the evidence, to have been due to the gross negligence of the master and pilot in attempting to enter the port when the fog was so thick that she could not be safely navigated, because the lines of the shore could not be seen, and it was not possible to ascertain her exact position in the channel.

**2. SAME—LIMITATION OF LIABILITY—PRIVITY OF OWNER.**

The fact alone that the crew of a vessel were Chinese, and unable to speak or understand the language spoken by any of the officers except the boatswain, does not establish that the vessel was not properly officered and manned, so as to preclude the owner from limiting its liability, under Rev. St. § 4283 [U. S. Comp. St. 1901, p. 2943], for losses resulting from her sinking through the negligence of the master and pilot, where it appeared that the crew were competent sailors, and that there was no difficulty in communicating orders to them through the Chinese boatswain.

In Admiralty. Petition for limitation of liability.

Ward McAllister and J. E. Foulds, for petitioner.

William Denman and Gavin McNab, for claimants.

DE HAVEN, District Judge. This proceeding was instituted by the Pacific Mail Steamship Company, a corporation, for the purpose of determining whether it is liable for damages arising from the loss of the steamship City of Rio de Janeiro while entering the port of San Francisco on the morning of February 22, 1901, and, in the event that the court shall find that the corporation is liable, then for a judgment limiting its liability, as provided in sections 4283 and 4284 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2943]. The petitioner also claims the benefit of the provisions of the act known as the "Harter Act" (Act Feb. 13, 1893, c. 6, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]). The right of the petitioner to limit its liability is contested by the representatives of some of the persons who were passengers on the City of Rio de Janeiro, and whose lives were lost as a result of the sinking of that steamer. It is claimed by them not only that the loss of the steamer was caused by reason of negligence upon the part of her master and pilot, but they further contend that the steamer was not provided with sufficient officers and crew to properly manage and navigate her. They allege that the City of Rio de Janeiro was "not provided with a full complement of licensed officers, sufficient at all times to manage the ship, but that all the officers and petty officers of the said ship were insufficient, in this: that no one of them, save the boatswain and first fireman, could speak the language of the members of the crew, comprising the sailors of her deck department, her firemen, and her coal passers; all said sailors, firemen, and coal passers being Chinese,

¶ 2. Limitation of shipowner's liability, see note to The Longfellow, 45 C. C. A. 387.

and unable to speak or understand any European language," and that the lives of the passengers were lost because of the "insufficiency of the said officers, whereby they were unable to make themselves understood by the said Chinese in the attempted lowering of the life boats from the said steamship, and placing therein the said passengers," on the occasion of the wreck of the steamer.

Upon consideration of the evidence, and of the able and exhaustive argument submitted in behalf of those claiming damages, my conclusions are:

1. That the master and pilot of the City of Rio de Janeiro were guilty of gross negligence in attempting to enter the port of San Francisco on the morning of February 22, 1901, when the fog was so thick that the steamer could not be safely navigated, because the lines of the shore were not discernible, and it was not possible to ascertain her exact position in the channel.

2. I think the evidence shows that the steamer was properly officered and had a sufficient crew. It is true the crew was mostly composed of Chinese, but the evidence shows without any conflict that they were competent sailors. Indeed, it is not claimed they were not; but the contention is that they did not understand our language, and because of this they could not and did not understand the orders to lower the boats. This contention is mainly based upon the evidence of some of the Chinese members of the crew, who testified that they were unable to speak or understand English, and could only receive orders through the Chinese boatswains, who could. But the evidence shows there was no difficulty in communicating orders to the Chinese crew in this way. Orders at sea are usually first given to subordinate officers, and by them communicated to the crew.

There will be a decree limiting the liability of the petitioner, in accordance with section 4283 of the Revised Statutes.